CLARENCE WHITMAN & SONS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9436. Promulgated February 10, 1948.

*Harry L. Brown, Esq.*, and *Gerhard Mayer, C. P. A.*, for the petitioner.

*Martin M. Lore, Esq.*, for the respondent.

OPINION.

HARLAN, *Judge*: In the assignments of error set out in the petition it is alleged that the Commissioner erred in failing to determine that the assessment of the proposed deficiency is barred by the statute of limitations. No proof was offered at the hearing in support of petitioner's allegation and no basis appears in the record for raising this issue. The facts show that waivers were executed by petitioner and filed with the collector of internal revenue extending the period for assessment of income and excess profits tax for the calendar year 1941 to June 30, 1947. The deficiency notice was mailed July 31, 1945, and the petition was filed October 23, 1945. It is obvious therefore that assessment is not barred by the statute of limitations and we so hold.

In its excess profits tax return for the calendar year 1941 the petitioner computed its excess profits credit under section 718 of the Internal Revenue Code. It claimed an equity invested capital of $2,304,665.72, consisting of cash paid in for stock, $670,000, accumulated earnings and profits, $634,665.72, and intangible property, paid in for stock, having a value or cost basis at the time paid in of $1,000,000, on which it computed an excess profits credit of $147,805.58.

The applicable statutes and regulations are set out in the margin.[1]

---

[1] SEC. 712. [I. R. C.] EXCESS PROFITS CREDIT—ALLOWANCE.

(a) DOMESTIC CORPORATIONS.—In the case of a domestic corporation which was in existence before January 1, 1940, the excess profits credit for any taxable year shall be an amount computed under section 713 or section 714, whichever amount results in the lesser tax under this subchapter for the taxable year for which the tax under this subchapter is being computed. * * *

SEC. 714. [I. R. C.] EXCESS PROFITS CREDIT—BASED ON INVESTED CAPITAL.

The excess profits credit, for any taxable year, computed under this section, shall be the amount shown in the following table:

| If the invested capital for the taxable year, determined under Section 715 is : | The credit shall be : |
|---|---|
| Not over $5,000,000 | 8% of the invested capital. |
| Over $5,000,000, but not over $10,000,000 | $400,000, plus 6% of the excess over $5,000,000. |
| Over $10,000,000 | $700,000 plus 5% of the excess over $10,000,000. |

* * * * * * *

SEC. 718. [I. R. C.] EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. * * *

* * * * * * *

(4) EARNINGS AND PROFITS AT BEGINNING OF YEAR.—The accumulated earnings and profits as of the beginning of such taxable year.

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property * * *

In the notice of deficiency the respondent determined the petitioner's excess profits credit under the income method as provided in section 713 of the Internal Revenue Code. He determined the net aggregate base period excess profits net income to be $350,712.72 on which he computed an excess profits credit of $83,294.27. In his explanation of adjustments he says:

Since you have failed to substantiate the amount of your equity invested capital which you claimed under the provisions of section 718 of the Internal Revenue Code, your excess profits credit has been determined under the income method as provided in Section 713 of the Internal Revenue Code.

The petitioner contends that the intangibles paid in for its common capital stock had a value in excess of $1,220,000 on June 3, 1918, when so paid in; and since the cash paid in for the stock and accumulated earnings at the beginning of the taxable year are ascertainable it is entitled to compute its equity invested capital under the provisions of section 718 of the Internal Revenue Code.

It appears from the record that on June 3, 1918, petitioner sold $200,000 par value of first preferred stock and $450,000 par value of its preferred stock to Clarence Whitman for $650,000 in cash. It also acquired from Clarence Whitman the exclusive right to use his name in its business for $1,000,000 par value of its common stock. The Commissioner determined that petitioner was not entitled, for equity invested capital purposes, to any value for good will on account of the acquisition of the name "Clarence Whitman" for use in its business.

Under the applicable statutes the equity invested capital is determined as the sum of (1) money paid in for stock, or as paid-in surplus, or as a contribution to capital; (2) property paid in for stock, or as paid-in surplus, or as a contribution to capital; and (3) the accumulated earnings and profits as of the beginning of the taxable year. There is no dispute as to the $650,000 paid in for preferred stock, nor is the amount of accumulated earnings and profits ($634,665.72) at the beginning of the calendar year questioned.

SEC. 30.718–1 [Regulations 109]. Determination of daily equity invested capital—*money and property paid in.*— * * *

If the basis to the taxpayer is cost and stock was issued for the property, the cost is the fair market value of such stock at the time of its issuance. If the stock had no established market at the time of the exchange, the fair market value of the assets of the company at that time should be determined and the liabilities deducted. The resulting net worth will be deemed to represent the total value of the outstanding stock. In determining net worth for the purpose of fixing the fair market value of the stock at the time of the exchange, the property paid in for such stock shall be included in the assets at its fair market value at that time.

If stock having no established market value is issued for intangible property, and it is necessary to determine the fair market value of such property, the following factors, among others, may be taken into consideration in determining such value: (a) The earnings attributable to such intangible assets while in the hands of the predecessor owner; and (b) any cash offers for the purchase of the business, including the intangible property, at or about the time of its acquisition. A corporation claiming a value for intangible property paid in for stock should file with its return a full statement of the facts relating to such valuation.

 *     *     *     *     *     *     *

The primary question, therefore, is whether the respondent erred in refusing to include in petitioner's equity invested capital the value, if any, of good will acquired in exchange for $1,000,000 par value of its common stock.

Section 718 (a) (2) of the code provides that such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange, i. e., the cost of such property. The regulations provide that where the basis to the taxpayer is cost and stock was issued for the property, the cost is the fair market value of the stock at the time of its issuance, but if the stock has no established market value the property paid in for the stock shall be included, in determining the net worth, at its fair market value at that time.

Petitioner further contends that the doctrine of *res judicata* requires that we find a value of at least $412,500 under the decision of the Board of Tax Appeals in *Clarence Whitman & Sons, Inc.*, 11 B. T. A. 1192. Therein the Board found that the value of the trade name "Clarence Whitman," when acquired by Clarence Whitman & Sons, Inc. (the petitioner therein and also the petitioner here) was "at least $412,500." Petitioner argues that in fact we are precluded from finding a value of less than $650,000, which was the amount of cash paid in for stock, because the opinion in that case refers to the intangible assets as "the most substantial part of its capital" and "the principal contributing factor in the production of taxable income of the petitioner."

The respondent contends that the petitioner has failed to support its claimed value of the trade name "Clarence Whitman" or to show that it had any value on June 3, 1918, when acquired by it. He argues that the common stock was of such a speculative character that it was necessary to give $333,000 par value of the stock as a bonus to secure a loan of $200,000 for one year and that this fact indicates it had little or no value when issued.

In support of the claimed value of $1,220,996.27 the petitioner submitted evidence of the net income of Clarence Whitman & Co., for the four-year period ended May 31, 1918, and it arrived at its claimed value of the good will acquired in exchange for its common stock by allocating to the tangible assets 8 per cent of the average yearly net income and capitalizing the balance at 15 per cent. See *Toledo Newspaper Co.*, 2 T. C. 794.

In applying this formula, however, to the instant case, the petitioner does not take into account the important fact that it is not a successor to all the assets and business of Clarence Whitman & Co. Cf. *Premier Packing Co.*, 12 B. T. A. 637; *Four Twelve West Sixth Co.*, 7 T. C. 26. It is true that petitioner did succeed to the name "Clarence Whitman" and upon organization took over the accounts of Esmond Mills, Stevens

Manufacturing Co. and Wilkes Barre Lace Co. But the white goods end of the business of Clarence Whitman & Co. did not go over to petitioner—it continued under the name of the American Bleached Goods Co. and retained most of the employees of Clarence Whitman & Co. In fact, only the Whitmans and a few salesmen went over with petitioner upon its organization and none of the tangible assets were transferred to petitioner. The fact that a substantial part of the good will did not go to petitioner is evidenced by the fact that Clarence Whitman & Co. in its income tax returns for the years 1918, 1919, and 1920 (during its period of liquidation) claimed good will for invested capital purposes in the amount of $2,917,500. Moreover, we have no record of the trade-marks or trade names used in the business or any evidence of the good will attaching to the various accounts or departments incident to the business, all of which were a part of the good will of Clarence Whitman & Co.

In *Rainier Brewing Co.*, 7 T. C. 162, we said, "The petitioner insists that the good will, as mathematically computed under an approved formula, represents the value of the trade names. Good will is an intangible, and just what goes into the cauldron to make up the sum of its ingredients is somewhat difficult to determine, but it would seem clear that the value of the trade names was not the full content of good will value attached to the business of petitioner's predecessor * * *."

In our opinion the earnings of Clarence Whitman & Co. do not constitute a proper basis for comparison. The name of Clarence Whitman did not embrace the full content of good will value of Clarence Whitman & Co., and petitioner's computation, based on the formula A. R. M. 34, does not reflect the good will value of the intangible assets acquired by petitioner June 3, 1918, in exchange for $1,000,000 par value of its common stock. However, the evidence submitted by petitioner does establish that Clarence Whitman had built up a very successful business in white and fancy cotton goods, blankets, laces, etc., which had been marketed under his name for many years by the partnership prior to 1913 and by Clarence Whitman & Co. from 1913 to 1918, when the name was acquired by the petitioner. During this long period it had come to be known to the trade and the stability of the business to which it was attached had been established. There is no doubt that it had acquired a tremendous good will value which was in large part acquired by the petitioner. It was a substantial part of petitioner's capital investment and, obviously, the largest contributing factor in stabilizing and building up its business. From the record before us it is our opinion the intangible asset acquired by petitioner June 3, 1919, in exchange for $1,000,000 par value of its common stock had a value of $500,000. We hold, therefore, that in computing its equity invested capital for the purpose of its excess profits tax the

petitioner may include as property paid in for stock intangibles in the amount of $500,000.

We have carefully considered the argument of both parties as to the issue of *res judicata*. In *Clarence Whitman & Sons, Inc., supra,* the Board of Tax Appeals found as a fact that "the trade name and good will transferred to petitioner on June 3, 1918, had a cash value at that time of at least $412,500." The opinion states that "the evidence fully sustains a value in excess of $412,500, the amount claimed by the petitioner, which is 25 per cent of the par value at which intangibles paid in for stock might be included in invested capital." It is obvious from the facts and decision in that case that the Board did not find the value of the intangibles as of June 3, 1918, but only a value to the extent of the requirements of that case. We think the issue of *res judicata* falls when considered in the light of the statutory requirement and the Board's rationale in relation thereto. We hold, therefore, that we are not estopped from finding the value of the assets in question and, since the value found is greater than $412,500, the question of whether we could find a value less than that amount becomes moot.

Reviewed by the Court.

*Decision will be entered under Rule 50.*